# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2977

_____

Nahum Gonzalez,                          *
                                         *
            Petitioner,                  *
                                         *
      v.                                 *    Petition for Review of an
                                         *    Order of the Department
Michael Chertoff, Secretary, U.S.        *    of Homeland Security.
Department of Homeland                   *
Security,                                *
                                         *
            Respondent.                  *


_____

Submitted: June 14, 2006
Filed: July 20, 2006

_____

Before SMITH, HEANEY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Nahum Gonzalez ("Gonzalez") petitions for review of a final administrative order of removal issued by the Department of Homeland Security ("DHS"). Gonzalez argues that the application of expedited removal proceedings was impermissibly retroactive and violated his due process and equal protection rights. For the reasons discussed below, we deny the petition for review.

## I. BACKGROUND

Gonzalez, a native and citizen of Mexico, pled guilty to second degree burglary in California state court in 1988 and was sentenced to two years' imprisonment. Gonzalez was subsequently deported to Mexico on October 7, 1991, but unlawfully reentered the United States later that day. He married a United States citizen in 1993.

On June 17, 2005, Gonzalez was identified as a deportable alien by an immigration enforcement agent in Bloomington, Minnesota. Presuming that his California conviction qualified as an aggravated felony within the meaning of § 8 U.S.C. § 1101(a)(43), DHS placed Gonzalez into expedited removal proceedings pursuant to § 238(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1228(b). That section, enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), provides that aliens (other than legal permanent resident aliens) convicted of an aggravated felony may be placed in expedited removal proceedings as described in 8 U.S.C. § 1228(b)(4)[1] with no hearing

---

[1]Section 1228(b)(4) provides as follows:

Proceedings before the Attorney General under this subsection shall be in accordance with such regulations as the Attorney General shall prescribe. The Attorney General shall provide that—
   (A) the alien is given reasonable notice of the charges and of the opportunity described in subparagraph (C);
   (B) the alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose;
   (C) the alien has a reasonable opportunity to inspect the evidence and rebut the charges;
   (D) a determination is made for the record that the individual upon whom the notice for the proceeding under this section is served (either in person or by mail) is, in fact, the alien named in such notice;
   (E) a record is maintained for judicial review; and

before an immigration judge and no eligibility for any form of discretionary relief from removal.

An immigration enforcement agent served a Notice of Intent to Issue a Final Administrative Removal Order ("NOI") on Gonzalez on June 20, 2005, but Gonzalez refused to acknowledge receipt of the NOI. On July 7, 2005, counsel for Gonzalez sent notice of representation to DHS and requested a hearing before an immigration judge on the charges in the NOI. DHS applied its procedures for expedited removal proceedings and issued a final administrative order of removal on July 12, 2005. Gonzalez timely petitions this Court for review of that order of removal, arguing that he did not receive the benefit of the procedural safeguards in § 1228(b)(4) in violation of his due process rights, that application of § 1228(b) to him was impermissibly retroactive, and that he was treated differently from similarly situated aliens in removal proceedings before an immigration judge in violation of his equal protection rights.

## II.    DISCUSSION

We have jurisdiction over Gonzalez's petition to review the administrative order of removal. *See* 8 U.S.C. § 1228(b)(3) (establishing that an alien may seek judicial review under INA § 242, 8 U.S.C. § 1252 of an order of removal issued after expedited proceedings). Our jurisdiction to review constitutional claims and questions of law has been codified in INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). *See, e.g.*, *Wijono v. Gonzales*, 439 F.3d 868, 871 (8th Cir. 2006). In addition, venue is proper in the Eighth Circuit because the expedited proceeding was conducted and the final order of removal was issued in Bloomington, Minnesota. 8 U.S.C. § 1252(b)(2) ("The

---

(F) the final order of removal is not adjudicated by the same person who issues the charges.

petition for review [of an order of removal] shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.").[2]

## A. Due Process

Gonzalez argues that he did not receive the benefit of the procedural safeguards in § 1228(b)(4). We do not reach Gonzalez's due process claim because Gonzalez failed to exhaust his administrative remedies. "[W]e have subject-matter jurisdiction over aliens' unexhausted constitutional claims unless the claims concern procedural errors correctable by the administrative tribunal." *Geach v. Chertoff*, 444 F.3d 940, 945 (8th Cir. 2006).

The NOI served on June 20, 2005 notified Gonzalez that he had ten calendar days to respond to the charges. *See* 8 C.F.R. § 1238.1(c). The NOI informed Gonzalez of each of the rights and opportunities available to him under § 1228(b)(4) and 8 C.F.R. § 1238.1, including the ability to request an extension of time to respond to the charges, and informed Gonzalez of the procedure for exercising those rights. However, Gonzalez first refused to acknowledge service of the NOI and then responded through counsel on July 7, 2005, well past the ten-day deadline. Even in his late response, Gonzalez only raised issues pertaining to reinstatement of his 1989 deportation order, an issue that the NOI did not address. Had Gonzalez timely responded to the NOI, the administrative officer who adjudicated his order of removal could have addressed any claims of deficient process. Therefore, Gonzalez's failure to respond to the NOI is a failure to exhaust administrative remedies that precludes

[2]We note that § 1252(b)(2) refers to the location in which "the immigration judge" completed the removal proceedings, while the expedited removal proceedings established by § 1228(b) do not involve an immigration judge. However, we read the cross-reference to § 1252(b) in the section establishing expedited proceedings as indicating that the same venue rule applies to removal proceedings presided over by any officer of DHS, not just by an immigration judge.

our Court's review of his due process claim. *Cf. Wijono*, 439 F.3d at 871(holding that this Court's consideration of a due process argument based on an IJ's processing of an asylum claim was precluded by the alien's failure to raise the claim to the Board of Immigration Appeals).

### B.    Retroactive Effect

Gonzalez contends that application of the expedited removal procedures in § 1228(b) was impermissibly retroactive.  We disagree.  "If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).  Because the statute in this case does not expressly address whether it should apply retroactively, we must determine whether applying the new statute would have retroactive effect; if so, we presume it does not govern. *Alvarez-Portillo v. Ashcroft*, 280 F.3d 858, 864-65 (8th Cir. 2002).  Although Gonzalez failed to exhaust this claim, we consider it on the merits because it is not a "procedural error[] correctable by the administrative tribunal." *Geach*, 444 F.3d at 945.

"A statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *INS v. St. Cyr*, 533 U.S. 289, 321 (2001) (internal quotation omitted).  Gonzalez unlawfully reentered the United States in 1991.  Before the establishment of § 1228(b) expedited removal proceedings by IIRIRA,[3] Gonzalez could have pursued adjustment of status based on his marriage to a United States citizen in 1993 as a defense to removal, via a waiver of inadmissibility under INA § 212(h), 8 U.S.C. § 1182(h).

---

[3]The provision became effective on April 1, 1997. *See* IIRIRA § 309(a), 110 Stat. 3009-625 ("[T]his subtitle and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act .").

Aliens in expedited removal proceedings, however, are not eligible for the discretionary § 212(h) waiver. *See* INA § 238(b)(5), 8 U.S.C. § 1228(b)(5) ("No alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion."). Essentially, Gonzalez argues that applying the expedited removal procedures to him was impermissibly retroactive because, by depriving him of the opportunity to apply for adjustment of status available when he reentered, it attached a new legal disability to a past act.

After the instant case was argued, the Supreme Court decided a retroactivity challenge to a similar provision established by IIRIRA in *Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422 (2006). The reinstatement-of-removal provision at issue in *Fernandez-Vargas* provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry.

INA § 241(a)(5), 8 U.S.C. § 1231(a)(5).

Fernandez-Vargas unlawfully reentered the United States in 1982. He started a business, fathered a child in 1989 and married the mother, a United States citizen, in 2001. He then filed an application for adjustment of status based on his marriage. Alerted to his presence, the immigration authorities reinstated a 1981 deportation order under § 1231(a)(5), with no possibility for adjustment of status, and removed Fernandez-Vargas to Mexico. Fernandez-Vargas contended that the application of the IIRIRA reinstatement-of-removal provision to him had retroactive effect because it attached a new consequence to his past act of illegal reentry in that it deprived him of the opportunity to apply for adjustment of status available at the time he reentered.

*Fernandez-Vargas*, 126 S. Ct. at 2428-32 & n.10.  The Supreme Court disagreed, holding:

> It is . . . the alien's choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, that subjects him to the new and less generous legal regime, not a past act that he is helpless to undo up to the moment the Government finds him out.

*Id.* at 2432.   Furthermore, while "[t]hat in itself is enough to explain that Fernandez-Vargas has no retroactivity claim," the conclusion is even stronger because the six-month delay between the passage of IIRIRA and its effective date gave "[u]nlawful alien reentrants like Fernandez-Vargas . . . the advantage of a grace period between the unequivocal warning that a tougher removal regime lay ahead and actual imposition of the less opportune terms of the new law."  *Id.*  For these reasons, the Supreme Court concluded that the application of the reinstatement-of-removal provision was not retroactive.

This reasoning applies with equal force to the application of expedited removal proceedings to Gonzalez.  As with Fernandez-Vargas, it was Gonzalez's "choice to continue his illegal presence . . . that subject[ed] him to the new and less generous legal regime" that denied him the opportunity to apply for adjustment of status, "not a past act that he is helpless to undo."  *Id.*  Also like Fernandez-Vargas, Gonzalez had a six-month grace period between the passage of IIRIRA and its effective date in which he "could have ended his illegal presence" or applied for adjustment of status based on his 1993 marriage.  *Id.*  Under these circumstances, the Supreme Court in *Fernandez-Vargas* found that the elimination of the opportunity to apply for adjustment of status under the new law imposed no new burden on a completed act, and we find that decision determinative on the issue of retroactivity in the instant

case.[4]  *Id.*  Therefore, we conclude that the application to Gonzalez of the expedited removal procedures in § 1228(b) was not retroactive.

### C.    Equal Protection

Section 1228(b) gives the Attorney General discretion to place aliens (other than legal permanent resident aliens) convicted of an aggravated felony into either the expedited removal proceedings described in § 1228(b) or general removal proceedings before an immigration judge as described in INA § 240, 8 U.S.C. § 1229a.  § 1228(b)(1).  Gonzalez claims that he was denied equal protection because similarly situated aliens placed in general, rather than expedited, removal proceedings could have applied for adjustment of status.[5]

"[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Lukowski v. INS*, 279 F.3d 644, 647 (8th Cir. 2002) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)).  Gonzalez does not allege any suspect basis for the direction of some aliens described in § 1228(b) into expedited removal proceedings and others into general removal proceedings.  Therefore, the Government need only assert a rational basis for the Attorney General's discretion to direct some aliens described in § 1228(b) into

---

[4]To the extent our decision in *Alvarez-Portillo*, 280 F.3d at 861 (holding that "the substantive defenses to removal eliminated by [INA § 241(a)(5), 8 U.S.C. § 1231(a)(5)] may not be retroactively denied to aliens who illegally reentered prior to enactment"), suggests a different result, it is overruled by *Fernandez-Vargas*.  *See Fernandez-Vargas*, 126 S. Ct. at 2427 & n.5.

[5]Gonzalez is married to an American citizen and could therefore seek to adjust his status under INA § 245(a), 8 U.S.C. § 1255(a) if he were placed in general removal proceedings.

potentially more lenient general, as opposed to expedited, removal proceedings. As it did in an identical equal protection challenge to § 1228(b) in the Fifth Circuit, "the Government points out that [aliens described in § 1228(b)] include many persons who could rationally be granted special deference and courtesy under the immigration laws: ambassadors, diplomats, employees of foreign governments, journalists, scholars, teachers, and professors, among others." *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 381 (5th Cir. 2005). We agree with our sister circuit that this reasoning constitutes "a rational basis for the Attorney General's exercise of such discretion." *Id.* at 382. Therefore, Gonzalez's equal protection challenge fails.[6]

## III. CONCLUSION

We conclude that Gonzalez failed to exhaust his administrative remedies with respect to his due process claim and that the application of expedited removal proceedings was not retroactive and did not violate his equal protection rights. Accordingly, we deny his petition for review.

_____

---

[6]We also agree with the Fifth Circuit that there is no need in this case to equate the Attorney General's discretion to place an alien in expedited or general removal proceedings with "prosecutorial choice." *See Flores-Ledezma*, 415 F.3d at 381 (citing *United States v. Batchelder*, 442 U.S. 114, 123-25 (1979)). Under the doctrine of prosecutorial choice, the Government's choice "to prosecute under either of two provisions, one of which has harsher consequences than the other" is "all but immune from [due process or equal protection] challenge unless tainted by determinations made on the basis of a suspect class." *Id.* Because we resolve the case on direct equal protection grounds, we need not address the Government's attempt to analogize the situation to prosecutorial choice.